UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

        v.     No. 08-CR-711
                                                                   (GLS)

GERALD AUMAIS,
                        Defendant.
_____

**APPEARANCES:**  **OF COUNSEL:**

HON. RICHARD S. HARTUNIAN  ELIZABETH A. HORSTMAN, ESQ.
United States Attorney for the Northern  Assistant United States Attorney
   District of New York
Gateway Building
Room 340
14 Durkee Street
Plattsburgh, New York 12901

HON. ALEXANDER BUNIN  GENE V. PRIMOMO, ESQ.
Federal Public Defender for the Northern  Assistant Federal Public Defender
   District of New York
Attorney for Defendant
5th Floor
39 North Pearl Street
Albany, New York 12207

JAMES R. MARSH, ESQ.
Attorney for Victim-Claimant
Post Office Box 4668
New York, New York 10163-4668

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

On February 4, 2009, defendant Gerald Aumais ("Aumais") pleaded guilty to both counts of an indictment alleging violations of 18 U.S.C. §§ 2252A(a)(1) and (5)(B), and 2256(8)(A) (transportation in foreign commerce and possession of child pornography).

Indictment (Docket No. 4); Docket entry dated 2/4/09.  Before sentencing, the United States moved for an order directing Aumais to pay restitution and to bifurcate issues regarding restitution from sentencing.  Gov't First Sentencing Mem. (Docket No. 18) at 6.  "Amy," a pseudonym for one of the individuals depicted in the materials possessed by Aumais,[1] formally requested restitution from Aumais through her representative, James R. Marsh, Esq.  Id. at 8; Presentence Report (PSR), Third Addendum.[2]

    The district court granted the request for bifurcation, sentenced Aumais on September 30, 2009 principally to 121 months imprisonment, and remanded Aumais to commence service of his sentence.  Docket Nos. 33, 34.  In a text order filed December 3, 2009, the district court referred the issues of restitution to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Docket entry dated 12/2/09.[3]  An evidentiary hearing was held on December 22, 2009.  Docket No. 47.  At that hearing , the only witness to testify was Dr. Joyanna Silberg, Ph.D., a clinical psychologist who examined Amy.  Id.

    What follows are the findings of fact and conclusions of law on the government's

---

[1] "Amy" is the pseudonym used to protect the victim's true identity in this and other cases.  See United States v. Doe, 488 F.3d 1154, 1155 n.1 (9th Cir. 2007) (approving the use of a pseudonym for a child victim on an appeal from an order of restitution); see also N.D.N.Y.L.R. (Criminal) 1.3 (requiring protection of the identities of the true names of minor children.).

[2] The PSR and addenda shall be filed by the Clerk under seal in the docket of this case.

[3] See also 18 U.S.C. § 3664(d)(6) ("The court may refer any issue arising in connection with a proposed order of restitution to a magistrate judge . . . for proposed findings of fact and recommendations as to disposition, subject to a de novo determination of the issue by the court.").

motion. Based on those findings and conclusions, it is recommended that an order be entered directing Aumais to pay Amy $48,483 in restitution.

### I. Background

On November 16, 2008, Aumais attempted to enter the United States from Canada in a vehicle at the Ft. Covington, New York Port of Entry. Aumais advised officials that he was a Canadian citizen bound for a motel on the nearby Akwesasne Mohawk Indian Reservation to conduct a one-week seminar. During the border inspection of Aumais' vehicle, seventy-eight DVDs were found bearing handwritten labels such as "Under 18," "School Girls," "Family Incest," and "Torture." Also found were two laptop computers, three thumbdrives, a small video recorder, and a digital camera. Compl. (Docket No. 1) at ¶¶ 6-9. Analysis of the images on the materials revealed over 2,000 still images and over 100 videos of a wide variety of child pornography. PSR at ¶ 8. Aumais acknowledged that the images were his and that he had obtained them by downloads from the Internet and by trading with other collectors. Id. at ¶ 7. Aumais was arrested, indicted, pleaded guilty, and was sentenced as indicated above.

Among the images in Aumais' collection were those of Amy. Now twenty, Amy was sexually abused by an uncle from ages four to eight. The abuse included images taken by the uncle of Amy naked and performing sexual acts with the uncle. Before his arrest and imprisonment, the uncle made the images available to others and the images were uploaded to the Internet. PSR, Second Addendum (Amy's Victim Impact Statement provided) (hereinafter "VIS"). Amy has suffered severe psychological trauma manifested in a variety of ways as the result of her uncle's conduct and contends that her injuries have

been aggravated by the circulation of her images over the Internet and by other means. Id.

## II. Discussion

The government moves on Amy's behalf, as does Amy on her own behalf through her representative, for an order pursuant to § 2259 directing Aumais to pay restitution to her in the amount of $3,367,854.00. See Gov't Second Sentencing Mem. (Docket No. 27) at 26-27. Section 2259 mandates that a court order restitution by a defendant to any victim for "the full amount of the victim's losses as determined by the court. . . ." 18 U.S.C. § 2259(b)(1). The section is "phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse." United States v. Laney, 189 F.3d 954, 966 (9th Cir.1999); see also United States v. Julian, 242 F.3d 1245, 1247 (10th Cir. 2001) (noting that § 2259 and two companion restitution statutes are broader than § 3663A, the general restitution statute). An order of restitution is reviewed on appeal "deferentially" and will be reversed "only for abuse of discretion." United States v. Pearson, 570 F.3d 480, 486 (2d Cir. 2009).

The motions for restitution raise two essential questions for resolution: (1) Were the damages claimed by Amy caused by the conduct of Aumais; and (2) if so, to what amount of restitution is Amy entitled from Aumais? The government bears the burden of proof on both issues by a preponderance of the evidence. See United States v. Crandon, 173 F.3d 122, 126 (3d Cir. 1999); United States v. Hicks, No. 1:09-cr-150, 2009 WL 4110260, at *1 (E.D. Va. Nov. 24, 2009); United States v. Rapplinger, No. 05-CR-49-LRR, 2007 WL 3285802, at *3 (N.D. Iowa Oct. 9, 2007); see also 18 U.S.C. § 3664(e).

## A. Causation

Restitution to a victim of child pornography is mandated by 18 U.S.C. § 2259. Section 2259 defines as a "victim" entitled to restitution an "individual harmed <u>as a result of</u> a commission of a crime under this chapter . . . ." 18 U.S.C. § 2259(c) (emphasis added). The offenses to which Aumais pleaded guilty are both included in the chapter to which § 2259 applies. <u>See</u> 18 U.S.C. ch. 110 (including among its provisions both §§ 2252A and 2256, the offenses to which Aumais pleaded guilty). The threshold question presented, therefore, is whether any harm suffered by Amy was "as a result of" Aumais' criminal conduct.

Every circuit to consider the causation requirement of § 2259 has required a showing of proximate cause. <u>See</u> <u>United States v. Doe</u>, 488 F.3d 1154, 1159-60 (9th Cir. 2007) (gathering cases). This standard requires that a victim's damages be "proximately caused by [the defendant's conduct] whenever it appears from the evidence that the [conduct] played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission." E. Devitt, C. Blackmar & M. Wolff, <u>Federal Jury Practice and Instructions: Civil</u> § 80.18, at 170 (4th ed. 1987). While this standard requires demonstration of a causal connection between a victim's claimed damages and the defendant's criminal conduct, it does not require proof "approaching mathematical precision." <u>Doe</u>, 488 F.3d at 1160. Thus, as every circuit to address the issue has held, "a rule of reasonableness is applied [and w]e will uphold an award of restitution under Section 2259 if the district court is able to estimate, based upon facts in the record, the amount of victim's loss with some reasonable certainty." <u>Id.</u>

The Second Circuit has joined other circuits in adopting the same standard for determining causation.  In United States v. Pearson, 570 F.3d 480 (2d Cir. 2009), the district court awarded restitution to two child victims against a defendant convicted of producing, transporting, receiving, and possessing child pornography.  At sentencing, the district court awarded restitution in a total amount of $974,902 and the defendant appealed that portion of the award for future medical expenses.  The Second Circuit held that under the reasonableness causation standard of Doe and other circuit cases, a victim may be entitled to estimated future medical and counseling expenses under § 2259 if those expenses can be reasonably estimated and remanded the case to the district court to identify the basis for its estimate of such future expenses.  Id. at 486-87.

The defendant in Pearson had direct contact with the two child victims and was convicted, inter alia, of producing child pornography.  Where a victim under § 2259 had direct contact with the defendant such as where the defendant sexually abused the victim or made photographs or videos of the victim later distributed to others, courts have encountered little difficulty finding the requisite causation.  See, e.g., Doe, 488 F.3d 1 at 1161-62 (finding causation for restitution where defendant convicted of manufacturing child pornography); United States v. Crandon, 173 F.3d 122, 125-26 (3d Cir. 1999) (affirming award of restitution to child victim whom defendant engaged in sex and of whom defendant made sexually explicit photographs later distributed on the Internet); United States v. Baker, No. 6:08-CR-99, 2009 WL 4572785, at *5-8 (E.D. Tex. Dec. 7, 2009) (finding causation for restitution to defendant's three children where defendant pleaded guilty to production of child pornography); United States v. Estep, 378 F. Supp. 2d 763, 772-74 (E.D. Ky. 2005) (finding causation for damages claimed by two victims of defendant's sexual abuse).

Here, Aumais was a consumer only of Amy's sexually explicit images and has never had direct contact with her.  See Stipulation (Docket No. 43) (stipulation among parties and Amy's representative that "'Amy' does not know who Gerald Aumais is.").[4] The issue presented here remains unaddressed by the Second Circuit – whether a defendant convicted only as a consumer of child pornography may be liable for restitution under § 2259 to a child victim.  The only circuit court to address this precise issue has recently upheld a district court's denial of an award of restitution to Amy from a consumer.  See In re Amy, __ F.3d __, 2009 WL 4928376, at *2 (5th Cir. Dec. 21, 2009) (denying writ of mandamus to Amy over strong dissent where district court denied an award of restitution from possessor of child pornography for failure to demonstrate proximate cause for claimed damages).  Opinions from district courts are similarly divided.  Compare Hicks, 2009 WL 4110260, at *4 (finding proximate cause established between defendant's possession of child pornography and harm suffered by victim depicted in images although victim aware of defendant only through criminal proceedings); United States v. Ferenci,[5] No. 1:08-CR-0414 AWI, 2009 WL 2579102, at *4-5 (E.D. Cal. Aug. 19, 2009) (awarding restitution to victim

---

[4]One of the counts to which Aumais pleaded guilty alleged that he imported and transported the child pornography from Canada into the United States and did not simply receive or possess it.  See Indictment.  However, the government has failed to demonstrate that Aumais intended to or did distribute any of the materials to others.  On this record, therefore, Aumais must be regarded only as a consumer of the child pornography he possessed.

[5]The same court entered virtually identical decisions at the same time in three other cases.  See United States v. Rengar, No. 1:08-CR-0270 AWI, 2009 WL 2579103, at *5-6 (E.D. Cal. Aug. 19, 2009); United States v. Monk, No. 1:08-CR-0365 AWI, 2009 WL 2567831, at *4-5 (E.D. Cal. Aug. 18, 2009) (involving Amy and another victim); United States v. Zane, No. 1:08-CR-0369 AWI, 2009 WL 2567832, at *4-5 (E.D. Cal. Aug. 18, 2009).

depicted in images possessed by defendant based on mandatory restitution language of § 2259);[6] with United States v. Van Brackle, No. 2:08-CR-042-WCO, 2009 WL 4928050, at *4 (N.D. Ga. Dec. 17, 2009) (finding no proximate cause between defendant's receipt of sexually explicit photographs of Amy and another victim and the damages asserted by the victims); United States v. Berrk, No. 08-CR-212-P-S, 2009 WL 3451085, at *8 (D. Me. Oct. 26, 2009) ("the Court finds that the Government has not met its burden of establishing a specific loss [to Amy and a second victim] proximately caused by this particular Defendant's possession of the Victims' images."); United States v. Simon, No. CR-08-0907 DLJ, 2009 WL 2424673, at *4 (N.D. Cal. Aug. 7, 2009) (stating in dicta that no causal connection had been shown between defendant's possession of sexually explicit images of Amy and Amy's claimed damages).[7]

There is no question that consumers, such as Aumais, contribute to the exploitation of child victims, such as Amy, depicted in the child pornography they possess.

> The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions in at least three ways. First, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the

---

[6] See also In re Amy, 2009 WL 4928376, at *3-5 (Dennis, J., dissenting) (finding that causation for harm caused by a consumer established under § 2259's "broad and generous provisions. . . ").

[7] Additional determinations are contained in a list of cases filed by the government summarizing all cases, reported and not, in which restitution was sought for a victim of child pornography under § 2259, the court, the determination, and the amount awarded, if any. Docket No.8-1. Of the listed cases in which the offense of conviction was for possession, receipt, or transportation rather than man manufacturing or distributing child pornography, the government reports that approximately 75% resulted in awards of restitution. Gov't Status Report (Docket No. 48) at 1-2 (summarizing cases listed in Docket No. 48-1).

> materials .... The consumer who "merely" or "passively" receives or possesses child pornography directly contributes to this continuing victimization .... Second, the mere existence of child pornography represents an invasion of the privacy of the child depicted.... Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials.... [T]he victimization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography.

United States v. Norris, 159 F.3d 926, 929-31 (5th Cir.1998); see also New York v. Ferber, 458 U.S. 747, 759 & n.10 (1982) ("Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution .... . A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."(internal quotation marks and citation omitted)).

There is also no question that circumscribed only by the limits of causation, Congress intended in § 2259 to mandate full compensation to victims from defendants for all harm caused by a defendant's criminal conduct. See, Doe, 270 F.3d at 455; United States v. Laney, 189 F.3d 954, 966 (9th Cir. 1999) ("Section 2259 is phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse."). As the dissenting opinion noted in In re Amy,

> Congress enacted § 2259 to provide broad restitution rights for victims who, like petitioner, have been harmed by the commission of child exploitation offenses, including possession of these sexually abusive images. Congress intended to afford child victims ample and generous protection and restitution, not to invite judge-made limitations patently at odds with the purpose of the legislation.

2009 WL 4928376. at *4 (Dennis, J., dissenting).

> Under § 2559(b)(3), a victim may recover for losses suffered as a result of
> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;

>   (C) necessary transportation, temporary housing, and child care expenses;
>   (D) lost income;
>   (E) attorneys' fees, as well as other costs incurred; and
>   (F) any other losses suffered by the victim as a proximate result of the offense.

Here, Amy seeks restitution for losses incurred as the result of lost wages and benefits to age sixty-seven and future counseling costs. Gov't Second Sentencing Mem. at 26; Marsh Submissions.[8] Her claim is supported principally by her VIS, the hearing testimony of Dr. Silberg, and the submissions of Amy's representative.

Proximate causation does not require proof that the conduct in question was the sole cause of harm or even the greatest cause as long as the conduct was a substantial factor in causing the harm. See Sheridan v. United States, 487 U.S. 392, 406 (1988) (Kennedy, J., concurring) ("It is standard tort doctrine that a reasonably foreseeable injury can arise from multiple causes . . . and each imposing liability accordingly."); Walther v. Sec'y of HHS, 485 F.3d 1146, 1151 n. 4I (Fed. Cir. 2007) (noting in tort action that where multiple factors combine to cause a harm, proximate cause requires that the factor in question have been a substantial factor, not that it was the predominant one). Under this analysis, a factor was substantial in causing a harm if it was important or significant. See Brandenburg v. Seidel, 859 F.2d 1179, 1189 (4th Cir.1988).

Here, the uncle's horrific acts of sexual abuse, production of the images, and distribution of those images to others unquestionably constituted the principal cause of the

---

[8] The government submitted two binders of pleadings and materials at the hearing. The binders include submissions by Amy's representative regarding her claimed damages. Those submissions are located at Vol. 1, tab 3. The volumes appear to contain materials not filed in the docket of this case. The two volumes, which were also provided to Aumais' counsel, shall be designated as a single group exhibit, Gov't Ex. 4, and maintained as part of the record of the hearing.

losses identified by Amy.  Likewise, the actions of others in distributing those images to consumers like Aumais constituted a significant and important factor in the harm inflicted on Amy.  The conduct of those consumers who simply possessed and viewed the images presents a more difficult question.  The exact number of recipients of the images of Amy is unknown, but according to the government, Amy has made formal requests for restitution in over 250 cases to date.  See also Van Brackle, 2009 WL 4928050, at *1 n.3.  A significant number of those are consumers only and, as well, it is reasonable to assume that given the number of potential consumers to whom the images may be transferred through the Internet, there likely exists a large number of other consumers who have not been identified to date.

It is arguable that given the large number of consumers, the conduct of a single consumer such as Aumais could not have constituted a "substantial," "important," or "significant" factor in causing the harm for which Amy seeks restitution.  The mere number of other potential factors causing harm is not determinative of proximate cause here, however.  The question of the substantiality, importance, and significance of the harm caused concerns the extent of that harm and not the comparative responsibility for the harm.  Thus, if the harm caused by Aumais' possession of Amy's images caused substantial harm to Amy, proximate cause has been demonstrated even if the conduct of others similar to that of  Aumais caused equal or greater harm.

Amy's VIS and the testimony of Dr. Silberg attest to the harm suffered by Amy from the conduct of her uncle and the distribution of the images he produced to others.  According to Amy's statement, Amy, now twenty, suffered understandable trauma from the abuse by her uncle and continues to experience significant emotional and psychological

harm. The fact that images of that abuse exist and remain in circulation exacerbates the harm. It causes Amy to believe that strangers are viewing her at this most vulnerable and degrading time in her life and that, given this permanent record, the humiliation and degradation will continue forever as others view her images. Thus, separate and apart from the harm resulting from the uncle's conduct, the conduct of consumers of Amy's images constitute an independent component of harm which exacerbates the trauma initiated by the uncle and generates a need for continuing therapy.

Dr. Silberg corroborated Amy's assertions.[9] Dr. Silberg noted that unlike other victims of sexual abuse, those such as Amy whose abuse is recorded in images and then traded or made available on the Internet can never regard their victimization as terminated or as a past event to which they must adjust. Rather, because the images of victims such as Amy continue to be viewed by consumers such as Aumais and exploited in various ways, such victims know that their exploitation will continue beyond their control. This leaves Amy and similar victims with feelings that they will never be safe, of helplessness, and of constant fear that they will be recognized from those images by friends and strangers.

On this record, the government has established by a preponderance of the evidence that Amy was depicted in child pornography, those who possessed and used the images of Amy exacerbated the harm to her from the original abuse by her uncle both by creating a market for the transfer of those images and by perpetuating and expanding the humiliation and degradation which Amy experiences from the existence of the images, and that Aumais was one such possessor and user of Amy's images. See Hicks, 2009 WL 4110260, at *5-6

---

[9]Dr. Silberg assisted Amy in preparing the VIS.

12

(finding that harm from original abuse exacerbated by possessor of images of that abuse and required restitution under § 2259). Even though Amy had no direct contact with Aumais nor even knew of his existence, Aumais' possession and use of Amy's images caused her harm because she knew that she was being exploited by a group of consumers; and, although unknown to Amy, Aumais was one such consumer. Actual knowledge by Amy that Aumais possessed and used her images is not required to establish causation.

Further, even though there may be hundreds or thousands of others who, like Aumais, have possessed and used Amy's images and thereby contributed to her harm, Aumais' conduct remains a substantial cause of that harm. Each possessor of Amy's images constitutes an individual who has caused the harm discussed above. That harm is not obviated or diminished by the fact that others also possessed the images. Rather, it exacerbates the harm by confirming how expansive has become the number of individuals exploiting Amy's images. By including possession of child pornography within the scope of offenses for which restitution is made mandatory in § 2259, Congress recognized this causal connection.

Accordingly, the government has satisfied the causation requirement for restitution to Amy.

### B. Damages

Section 2259 requires a court to award restitution to a victim such as Amy for "the full amount of the victim's losses" as determined by the court. 18 U.S.C. § 2259 (a) & (b)(1). The government seeks an award of restitution to Amy totaling $3,367,854. Gov't Second Sentencing Mem. at 26-27. That total is comprised of a net amount of $2,855,173 in loss

wages and benefits to age sixty-seven and $512,681 for future counseling costs. Id. Those courts which have awarded restitution to Amy under § 2259 have done so in amounts ranging from $3,263,758, see J'ment in United States v. Freeman, No. 3:08CR22-002/LAC (N.D. Fla. Apr. 28, 2009) (attached to Gov't First Sentencing Mem. (Docket No. 18-1) at 8,[10] to $3,000. See Monk, 2009 WL 2567831, at *7; Zane, 2009 WL 2567832, at *7;[11] see also Docket No. 48-1 (listing cases ruling on applications for restitution under §2259 for victims other than Amy and, where granted awarding amounts ranging from $3,680,153 to $50 with most awards between $5,000 and $1,000). It is clear from the cases that the amount to be awarded a victim depends upon the facts of the particular case and that, even accounting for victims' disparate circumstances, courts have varied widely in their determination of the amounts of restitution.

The damages sought here by Amy appear to conflate the harm she suffered from the conduct of her uncle and that from the conduct of consumers such as Aumais. However, where, as here, a party is responsible for exacerbating a pre-existing condition, damages are generally limited to that attributable to the exacerbation and not the original injury. See Mauer v. United States, 668 F.2d 98, 99-100 (2d Cir. 1981) (tort action); Larson v. United States, No. 01-1580 (DSD/SRN), 2005 WL 1691363, at *6 (D. Minn. Apr. 14, 2005) ("Where a preexisting condition or disability is aggravated by the negligence of another person, the measure of damages is limited to the additional injury caused by the aggravation."); Colon

---

[10]The offenses of conviction included engaging in a child exploitation enterprise, conspiracy, transportation, distribution, and possession. Docket No. 18-1 at 1.

[11]In both Monk and Zane, the offenses of conviction were possession of child pornography. Monk, 2009 WL 2567831, at *1; Zane, 2009 WL 2567832, at *1; see also note supra.

v. Rinaldi, No. 01-1571 (DRD), 2006 WL 3421862, at *11 (D. P.R. Nov. 28, 2006). Therefore, the harm resulting from Aumais' conduct must be considered separately from that resulting from pre-existing harm such as that caused by Amy's uncle.

The first of the two categories of damages sought by the government is for lost wages and benefits to age sixty-seven. Amy's VIS and Dr. Silberg's testimony both describe Amy's difficulties maintaining employment, both past and future. Both attribute these difficulties to the trauma Amy experienced first with her uncle and later with circulation of her images. First, however, there has been presented little or no evidence that Amy has been or will be disabled from employment, either totally or partially. Second, the causal link between the harm to Amy and her employment difficulties has not been demonstrated by a preponderance of the evidence. In particular, it requires major assumptions to connect the harm resulting from possession and viewing of Amy's images to her inability to maintain employment or to obtain more lucrative employment. Third, there is no basis to conclude that Amy will remain unemployed or underemployed for the rest of her working life and to conclude otherwise requires speculation. Accordingly, the government has failed to demonstrate by a preponderance of the evidence that Aumais' conduct resulted in or will cause any lost income or benefit to Amy.

The other category of damages sought by the government is for future counseling costs. Such costs are allowed under § 2259(b)(3)(A). Pearson, 570 F.3d at 486. However, "an order of restitution for future losses may be inappropriate [where] the amount of loss is too difficult to confirm or calculate . . . . " Id. (internal quotation marks and citations omitted). From Amy's VIS and Dr. Silberg's testimony, it appears reasonably certain that Amy will require counseling in the future to continue addressing not only the harm resulting from her

uncle's abuse but also the harm resulting from the fact that numerous others have and will view the images of her abuse forever. The harm from the uncle's abuse and that from possession of the images of the abuse by others are closely related for purposes of counseling and cannot be separate to allocate costs between them as it appears that Amy will require counseling for both.

The government seeks damages for counseling through 2070. See Gov't Ex. 4, vol.I, Tab 3, Table 7 (page 2000890). It calculates that Amy will require, inter alia, one hour of counseling per week and that the cost of that counseling will be $150 per hour. Id. at page 200059. The need for Amy to receive counseling for the remainder of her life requires substantial speculation as to the success of her counseling, future events in her life, and other matters not reasonably foreseeable at present. Thus, a determination must be made as to how far into the future Amy is reasonably likely to require counseling.

Other courts awarding or approving restitution for future counseling services have reached a variety of results. See Pearson, 570 F.3d at 487 (remanding award of restitution for future counseling costs to "secure a more thorough explanation from the district court as to the basis for its restitution determination"); Doe, 488 F.3d at 1160-61 (approving or der for two years of counseling); United States v. Danser, 270 F.3d 451, 455-56 (7th Cir. 2001) (affirming award to child victim for counseling costs for remainder of life); Laney, 189 F.3d at 966-67 (affirming award based on finding of six years); Hicks, 2009 WL 4110260, at *5-6 (awarding victim a total of $128,000 for the costs of counseling until she reached mid-50s); Estep, 378 F. Supp. 2d at 773 (awarding child victims costs of counseling once per month for life); see also United States v. Julian, 242 F.3d 1245, 1246-48 (10th Cir. 2001) (reversing order of restitution for failing to specify amount of costs awarded and period of time for

which award made and remanding for further findings).

The evidence in the record establishes that Amy is reasonably certain to require counseling on a weekly basis for at least the next five years and monthly counseling thereafter for at least another five years. Given Amy's present age, psychological condition, and circumstances as established by her VIS and Dr. Silberg, Amy will benefit from counseling on a weekly basis for the near future as she seeks to address her difficulties with generalized fear, her sense of being unsafe, hopelessness resulting from her inability to halt access to her images, intimate relationships, and employment situations causing her stress. The government has demonstrated by a preponderance of the evidence that Amy will reasonably require counseling beyond the next five years. However, given that period of more intense treatment, increasing maturity, and time, the need for the same frequency of counseling has not been demonstrated. Accordingly, the Court finds that for the subsequent five-year period, it is reasonably certain that Amy will require counseling once per month.

The counseling sessions take one hour for each session at the present rate of $150 per hour. Gov't Ex. 4, vol. I, Tab 3, at page 200059. Both the period required for each session and the hourly rate appear reasonable. The cost for the next five years of counseling once per week at this hourly rate is $37,855 after reduction to present value. See id. at page 200080. The cost of counseling for the subsequent five-year period for one counseling session per month at the same hourly rate is $10,628 after reduction for present value. See id. Therefore, the total amount of the costs for the future counseling services which the government has established by a preponderance of the evidence is $48,483.

The only remaining question is whether this award should be imposed against

17

Aumais jointly and severally with like awards and judgments or apportioned and imposed only as to Aumais.  This issue arises under § 2259, of course, only where there are, as here, multiple contributors to a victim's harm.  Section 2259(b)(1) states that " [t]he order of restitution under this section shall direct the defendant to pay the victim . . . the full amount of the victim's losses as determined by the court . . . ."  (Emphasis added).  The question has not been resolved by the Second Circuit, but the Third Circuit has interpreted the statute to mandate an award of the full amount of damages against each defendant found to have proximately caused harm without apportionment.  See Crandon, 173 F.3d at 126 n.2 ("[O]nce proximate cause is established, the statute requires the court to order restitution for the "full amount of the victim's losses [and t]here is nothing in the statute that provides for a proportionality analysis."); but see Hicks, 2009 WL 4110260, at *6 (apportioning restitution notwithstanding mandatory language of § 2259(b)(1) based on difficulties in monitoring collection by victim from different defendants in different locations).

As the Third Circuit held, the language of § 2259(b)(1) appears unambiguous and mandates an award of the full amount of the damages found to have resulted to the victim. Any difficulty in monitoring or administering collection of multiple restitution awards to the same victim to prevent excess recovery is a matter for administration by the government.[12] Amy is represented by counsel in all cases in which she has been identified as a victim and counsel could be directed by the Court to provide current information on the status of awards and collection.  Individual defendants may also obtain information on other amounts collected by a victim as restitution in other cases during collection proceedings to offset

---

[12]The government suggests this as one possibility.  See Gov't Second Sentencing Mem. at 29.

what may be collected from that defendant.

Accordingly, the award of restitution as to Aumais should include the entire and not an apportioned amount.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that an order of restitution in favor of Amy be entered against Aumais under § 2259 in the total amount of $48,483.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

DATED: January 13, 2010
        Albany, New York

*David R. Homer*
United States Magistrate Judge